153 Wis.2d 185 (1989)
450 N.W.2d 478
Marie I. PROBST, Plaintiff-Appellant,
v.
LABOR & INDUSTRY REVIEW COMMISSION, Butler Building Supply, Inc., and Home Insurance Company, Defendants-Respondents.
No. 89-0601.
Court of Appeals of Wisconsin.
Submitted on briefs October 17, 1989.
Decided November 1, 1989.
*186 On behalf of the plaintiff-appellant, the cause was submitted on the brief of Paul J. Pytlik, of Otjen, Van Ert, Stangle, Lieb & Weir, S.C. of Milwaukee.
On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted *187 on the brief of Donald J. Hanaway, attorney general and Lowell E. Nass, assistant attorney general.
On behalf of the defendant-respondent, Butler Building Supply, Inc., and Home Insurance Company, the cause was submitted on the brief of Craig W. Nelson of Piette, Nelson, Zimmerman & Dries, S.C. of Milwaukee.
Before Brown, P.J., Scott and Nettesheim, JJ.
NETTESHEIM, J.
Marie Probst appeals from a circuit court judgment affirming an order of the Labor and Industry Review Commission (LIRC) which denied Probst's worker's compensation claim for mental disability benefits. On appeal Probst contends that LIRC erred in its interpretation and application of sec. 102.01(2)(c), Stats. (1985-86),[1] the statute defining compensable worker's compensation injuries. We reject Probst's arguments and affirm the judgment.
The parties do not dispute the essential and controlling facts as determined by the administrative law judge (A.L.J.). Butler Building Supply, Inc. (Butler) is a family-owned corporation which sells roofing supplies. Butler is owned by Probst, her husband and her son. Probst directed Butler's business affairs from 1957 to October 1984. She took pride in maintaining Butler's good credit rating and saw to it that Butler's bills were promptly paid. On occasion, Probst would even personally loan money to Butler in order to receive discounts for the early payment of Butler's debts.
*188 Historically, Butler's largest customer was J.F. Probst and Company, Inc. (JFP), a roofing contractor owned by Probst's husband and son. Butler and JFP maintained a "brother-sister" relationship for tax purposes. Butler always had a large amount of accounts receivable due from JFP. At the conclusion of each fiscal year from 1977 to 1984, these accounts receivable were never less than $250,000.
In December of 1981, JFP installed a roof on a project for the M.S.I. General Corporation (MSI). JFP purchased the supplies for this project from Butler. The roof failed and had to be replaced by JFP. A domino effect then set in: MSI refused to pay JFP; JFP could not pay Butler; and Butler in turn could not pay its principal supplier, Owens-Corning. As a result, Butler experienced cash flow problems and was repeatedly dunned by Owens-Corning. In addition, Butler commenced litigation against MSI and was compelled to place liens gainst the assets of JFP, its "sister" corporation.
In the spring and summer of 1982, Probst began to experience various physical problems and anxiety attacks. She consulted with a physician but continued to direct Butler's affairs. In April 1983, she began treating with Dr. Kathryn C. Bemmann, a psychiatrist. Dr. Bemmann treated Probst with medication and psychotherapy. This treatment concluded in the fall of 1983 but recommended in July 1984. At that time, Probst resigned her position with Butler and has not been employed since.
Dr. Bemmann opinion that Probst suffers from agoraphobia with panic attacks as a result of work stress caused by Bulter's financial and legal problems. In addition, Dr. Itzhak Matusiak, a psychologist to whom Probst was referred by Dr. Bemmann, opined that *189 Probst suffers from a neurotic depression and an anxiety and panic disorder.Dr. Matusiak also opined that Probst's work-related stresses resulted in a precipitation, aggravation and acceleration of a preexisting condition beyond its normal progression.
In her decision, the administrative law judge observed:
[S]ome of the stress the applicant experienced after the roof failure in December of 1981 arose from circumstances which were unusual to her and to her business. However, that is not the legal test. Looking at employes in general, nonpayment of accounts, cash flow problems, litigation and repeated contacts from creditors are circumstances common to their daily lives. If the pool of employes is limited to executive officers running small businesses (especially businesses involved in the construction and construction supply industry) then the emotional strains and tensions the applicant experienced after December of 1981 are exceedingly common. [Emphasis in original.]
Based upon the above reasoning, the ALJ found that the "emotional stresses and strains that the applicant experienced after December of 1981 arose from conditions and circumstances common to daily life." Consequently, the ALJ concluded that Probst's nontraumatically caused mental condition was not a compensable industrial injury pursuant to sec. 102.01(2)(c), Stats. LIRC affirmed the ALJ's findings and order. The circuit court affirmed the LIRC order. Probst appeals.
The issue is whether Probst's nontraumatically caused mental condition is a compensable industrial injury within the meaning of sec. 102.01(2)(c), Stats. The statute provided in part:

*190 "Injury" means mental or physical harm to an employe caused by accident or disease. . . . "Injury" includes mental harm or emotional stress or strain without physical trauma, if it arises from exposure to conditions or circumstances beyond those common to occupational or nonoccupational life.
Id.
[1, 2]
We begin by considering our scope and standard of review. As to the circuit court ruling, our scope of review is the same as that applied by the circuit court. Esparza v. DILHR, 132 Wis. 2d 402, 405, 393 N.W.2d 98, 100 (Ct. App. 1986). This court owes no deference to the decision of the circuit court. Id. As to the agency ruling, where the interpretation of a statute is involved, a question of law is presented and we generally are not required to follow the agency interpretation. West Allis School Dist. v. DILHR, 116 Wis. 2d 410, 418, 342 N.W.2d 415, 420 (1984).
[3, 4]
However, when an administrative agency determination requires a value judgment premised upon the agency's expertise, we must accord the agency determin Lion great weight, although it is not controlling. Nigbor v. DILHR, 120 Wis. 2d 375, 383-84, 355 N.W.2d 532, 537 (1984). In such situations, we will defer to the agency's conclusions if they are found to be reasonable, even if this court would not have reached the same conclusions. Id. at 384, 355 N.W.2d at 537.
Our supreme court has set forth the test to be applied in nontrumatic mental injury cases:
Thus it is the opinion of this court that mental injury nontraumatically caused must have resulted from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees *191 must experience. Only if the "fortuitous event unexpected and unforeseen" can be said to be so out of the ordinary from the countless emotional strains and differences that employees encounter daily without serious mental injury will liability under ch. 102, Stats., be found.
School Dist. No. 1 v. DILHR, 62 Wis. 2d 370, 377-78, 215 N.W.2d 373, 377 (1974).
Probst complains that LIRC erred by focusing only on the type of job duties that employees similarly situated face, rather than the nature and magnitude of the stresses and strains which she actually endured. However, the School District No. 1 test does not contemplate consideration of the claimant's stresses and strains alone. Rather, these must be measured against the "day-to-day emotional strain and tension which all employees must experience." Id. Only by so doing can the agency determine whether the event is "so out of the ordinary from the countless emotional strains and differences that employees encounter daily without serious mental injury." Id. at 378, 215 N.W.2d at 377. The LIRC interpretation and application of the statute is squarely in keeping with the mandate of School District No. 1 and is, therefore, eminently reasonable. See Nigbor, 120 Wis. 2d at 384, 355 N.W.2d at 537.
[5]
LIRC is the agency charged with determining eligibility for worker's compensation and as such has developed expertise in the area. See, e.g., Esparza, 132 Wis. 2d at 407-08, 393 N.W.2d at 100-01. The School District No. 1 test has been on the books for twenty-five years and represents the standard under which the agency has been making its value judgments and applying its expertise. Such expertise is significant in determining whether a claimant has suffered compensable "mental *192 harm or emotional stress or strain" pursuant to sec. 102.01(2)(c), Stats. See Esparza, 132 Wis. 2d at 407-08, 393 N.W.2d at 100-01. The evidence cited by the ALJ well supports the value judgment made by the agency in this case. Recognizing that the agency's value judgment rests upon its expertise in the area, we accord it appropriate deference and affirm the circuit court judgment.
Probst also raises an issue couched in terms of sufficiency of the evidence. However, the premise of this issue is the same as that already addressedthat the agency misinterpreted and misapplied sec. 102.01(2)(c), Stats. Since we have already concluded that the agency's interpretation and application of the statute was correct, we need not further address this final claim.
By the Court.Judgment affirmed.
NOTES
[1] Unless otherwise indicated, all references to sec. 102.01(2)(c), Stats., are to the 1985-86 statutes. Although significantly amended by sec. 1, 1987 Wis. Act 179, the change took effect April 1, 1988, and does not alter the outcome of this case. See sec. 28, 1987 Wis. Act 179.