Toby BROWN, Appellant,

v.

QUIK TRIP CORPORATION and CNA Insurance, Appellees.

No. 00–0868.

Supreme Court of Iowa.

Feb. 27, 2002.

Thomas M. Wertz of Wertz & Leehey, Cedar Rapids, for appellant.

Peter J. Thill and Deborah A. Dubik of Betty, Neuman & McMahon, L.L.P., Davenport, for appellee.

LARSON, Justice.

This is an appeal from a judgment of the district court affirming the workers' compensation commissioner's denial of benefits in a "mental/mental" injury case. We vacate the ruling of the court of appeals, reverse the judgment of the district court, and remand to the workers' compensation commissioner.

## I. Facts and Prior Proceedings.

Toby Brown was an employee of Quik Trip Corporation, working at a gas station/convenience store. In the early morning of January 18, 1994, he was working alone, finishing the night shift, when an altercation broke out among customers. One of the customers was shot in the leg. Brown was not physically involved in the incident, but he observed it, and he had to clean up the blood from the shooting. Brown went several times to the police station to identify the individuals involved, and he was called to testify in court with regard to the events of that day.

Six days after the shooting incident, Brown, again working alone, was the victim of a robbery at a different Quik Trip at approximately 1 a.m. The robber grabbed Brown by the arm, swung him around, stuck an object that Brown thought to be a gun in Brown's back, and demanded all of the money, which Brown gave to him. Brown was told to get down, and he did. The robber left but returned and said, "I told you to get the ... down or I'm going to blow your ... head off." Brown laid spread-eagle on the floor until the phone rang; it was the security organization calling in response to a silent alarm that Brown had triggered. Brown later testified

a lot of things went through my mind when that guy had the gun to my back.... Where [were] my kids going to be. You know, am I going to walk out of here. Am I going to be all right when I walk out of here. Is there going to be—you know, is he going to hit me, shoot me, or—it just really scared me.

Following these two events, Brown began suffering from shakiness, upset stomach, tight chest, nervousness, and jumpiness. In February of 1995 he began seeing a counselor. Later, he saw Dr. Wayne Alberts for treatment of sores that had begun to develop in his mouth. In August of 1995 Brown began consulting Dr. Allen Whitters, a psychiatrist referred to him by Dr. Alberts, to help control the anxiety that contributed to the mouth sores. Dr. Whitters reported Brown suffers from delayed post-traumatic stress disorder, attributable to the 1994 incidents at the Quik Trip stores. Dr. Whitters further stated that

the additional trauma of the robbery aggravated the effect of the shooting, so the cumulative effect was more traumatic than the sum of the two events.

A deputy workers' compensation commissioner found Brown had sustained a mental/mental injury (a mental injury caused merely by psychological stress or trauma without an accompanying physical injury) arising out of and in the course of his employment. Quik Trip appealed to the commissioner, who reversed the decision of the deputy and concluded Brown did not meet his burden to prove legal causation. Brown sought judicial review, and the district court affirmed. On appeal the court of appeals reversed and remanded the case to the commissioner to determine anew whether Brown had established legal causation. Two judges dissented on the ground Brown had met the legal-causation test and the remand should be limited to ascertaining the extent of his industrial disability.

## II. *Standard of Review.*

■ When reviewing a commissioner's decision, a district court is required to review all of the evidence and determine whether substantial evidence supports the commissioner's decision. Iowa Code section 17A.19(10)(f)(1) (1999) defines substantial evidence as

> the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

■ On appeal we apply the standards of section 17A.19 to the agency action and determine whether our conclusions are consistent with those of the district court. *Bearce v. FMC Corp.*, 465 N.W.2d 531, 534 (Iowa 1991).

## III. *Legal Principles Underlying "Mental/Mental" Cases.*

We held in *Dunlavey v. Economy Fire & Casualty Co.*, 526 N.W.2d 845 (Iowa 1995), that a purely mental injury is compensable without an accompanying physical injury under certain circumstances. *Dunlavey* requires that a claimant establish both medical causation and legal causation. *Id.* at 853–58.

■ In this case, it is undisputed that Brown suffers from posttraumatic stress disorder, and Quik Trip does not contest his claim of medical causation. The issue is whether Brown also established legal causation. In *Dunlavey* we recognized a purely mental injury as a "personal injury" under Iowa Code section 85.3(1) (1993), and thus compensable. The question raised in *Dunlavey* was how to prove a compensable mental injury because, obviously, every job could be considered traumatic at times. *See Shope v. Indus. Comm'n*, 17 Ariz.App. 23, 495 P.2d 148, 150 (1972) (Allowing recovery for gradual buildup of emotional stress would "literally open Pandora's Box permitting compensation to any disgruntled employee who leaves his job in a huff because of an emotional disturbance.").

Under *Dunlavey* a worker must prove he "has a mental injury which was caused in fact by mental stimuli in the work environment." 526 N.W.2d at 847. We referred to this element as medical or factual causation. *Id.* The claimant in *Dunlavey* produced medical evidence to support this element. However, we reversed in *Dunlavey* because we held the industrial commissioner and district court applied the wrong test for legal causation. *Id.* The test for legal causation under *Dunlavey* is whether the claimant's stress was "of greater magnitude than the day-to-day mental stresses

experienced by other workers employed in the same or similar jobs, regardless of their employer." *Id.* at 858. Here, the industrial commissioner and district court applied the legal-causation test of *Dunlavey* and rejected Brown's claim because he had not shown his stress was greater than that of other workers employed in the same or similar jobs. In fact, Brown did not even introduce evidence regarding stress experienced by other workers in similar jobs. Quik Trip contended this was fatal to his claim, and the industrial commissioner and district court agreed.

We believe the proof of legal causation for recovery under a mental/mental injury does not require evidence of stress experienced by similarly situated workers if the event or events giving rise to the claim are readily identifiable under a test we will discuss later. This conclusion is consistent with *Dunlavey*, which did not involve a readily identifiable stress factor such as in this case. The "unusual stress" test adopted by us in *Dunlavey* was based on a decision by the Wyoming Supreme Court in *Graves v. Utah Power & Light Co.*, 713 P.2d 187, 193 (Wyo.1986).[1] In *Graves* the Wyoming Supreme Court explained its rationale for the unusual–stress test:

> "Where a mental injury occurs rapidly and can be readily traced to a specific event, . . . there is a sufficient badge of reliability to assuage the Court's apprehension. Where, however, a mental injury develops gradually and is linked to no particular incident, the risk of groundless claims looms large indeed."

*Graves,* 713 P.2d at 192 (quoting *Townsend v. Maine Bureau of Pub. Safety,* 404

A.2d 1014, 1018 (Me.1979)). As the *Graves* court noted,

> [i]f we allowed workers to recover for long-term mental injuries when those injuries were triggered by everyday work stress, then almost all mental injuries would be compensable from the worker's compensation fund. There are very few workers with nontraumatic mental problems who cannot show that job stress contributed to their problems. The employers would become insurers for almost all mental illnesses suffered by their employees.
>
> In addition, the district courts would have great difficulty distinguishing between legitimate claims of mental injury and malingering.

*Id.* (citation omitted).

Both *Graves* and *Dunlavey* are distinguishable because in those cases the stress was not based on specific traumatic incidents. In fact, subsequent to the *Graves* case, the Wyoming Supreme Court found in favor of a claimant's mental/mental claim, even though no similarly situated employee had testified. *See Johnson v. State ex rel. Worker's Comp. Div.,* 798 P.2d 323, 324–25 (Wyo.1990). In *Johnson* the claimant was a truck driver who, while driving in hazardous winter conditions, lost control of his vehicle and narrowly avoided a collision with another vehicle. *Id.* at 324. While Johnson suffered no physical injuries, he started having nightmares and suffered from insomnia and depression. *Id.* The Wyoming court observed, as to legal causation, that:

> The accident also satisfies the requirement that the mental injury resulted from a situation or condition that is of

---

1. This line of cases was superceded by statute in Wyoming in 1994, when Wyoming Statutes section 27–14–102(a)(xi)(J) (Lexis 1999), was enacted excluding from workers' compensation coverage "[a]ny mental injury unless it is

caused by a compensable physical injury, [and] it occurs subsequent to or simultaneously with, the physical injury. . . ." *See Sechrist v. State ex rel. Workers' Safety & Comp. Div.,* 23 P.3d 1138, 1139–40 (Wyo.2001).

greater magnitude than the day-to-day stresses and tensions all employees usually experience. While it may be normal for and expected of over-the-road truck drivers to encounter hazardous, wintery driving conditions on Wyoming highways, involvement in an accident when driving in those conditions or any weather conditions falls beyond any day-to-day stress and tensions. It was the accident and not the driving in hazardous conditions that caused Johnson's injuries.

*Id.* at 326.

This rationale is supported by a respected authority who notes that claims based on a sudden event may not require proof of "normal" working conditions, observing:

> The least troublesome cases are those involving sudden fright and fear since this kind of experience would be rated unusual in comparison with any norm. Except for the adventurous heroes that inhabit the world of one-hour television thrillers, continuous terror, shock, and dramatic brushes with death are not the normal routine of life.

Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 44.05[4][a], at 44-50 (2001).

■ The appropriate test under the circumstances of the present case is not whether the stress is greater than that experienced by similarly situated employees, as we required in *Dunlavey*. When a claim is based on a manifest happening of a sudden traumatic nature from an unexpected cause or unusual strain, the legal-causation test is met irrespective of the absence of similar stress on other employees. *See Tocco v. City of Great Falls,* 220 Mont. 221, 714 P.2d 160, 163–64 (1986) (applying similarly worded statutory test). Quik Trip concedes medical causation has been established. It relies solely on Brown's failure to produce testimony of similarly situated employees to establish his claim of legal causation. However, the two violent events occurring in Brown's employment with Quik Trip satisfied the test as outlined above. These events were sudden, traumatic, and unexpected. Quik Trip, in fact, does not contend otherwise.

We conclude the claimant satisfied the requirement for establishing legal causation. We therefore vacate the decision of the court of appeals, reverse the judgment of the district court, and remand to the workers' compensation commissioner to determine the extent of Brown's disability.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED.

All justices concur except NEUMAN and TERNUS, JJ., who take no part.