# IN THE SUPREME COURT OF IOWA

No. 29 / 04-1538

Filed October 13, 2006

**W. HAROLD ASMUS**,

Appellant,

vs.

**WATERLOO COMMUNITY SCHOOL DISTRICT** and **EMPLOYERS MUTUAL COMPANIES,**

Appellees.

Appeal from the Iowa District Court for Black Hawk County, James C. Bauch, Judge.

Middle school teacher who filed workers' compensation claim based on alleged mental injury appeals from decision on judicial review upholding workers' compensation commissioner's denial of that claim. **AFFIRMED.**

Jay P. Roberts and Carter J. Stevens of Roberts, Stevens & Lekar, PLC, Waterloo, for appellant.

Valerie A. Landis of Hopkins & Huebner, P.C., Des Moines, for appellees.

**CARTER, Justice.**

W. Harold Asmus (claimant), a teacher in the Waterloo Community School District for twenty-six years, appeals from a decision on judicial review upholding the workers' compensation commissioner's denial of his disability claim based on an alleged mental injury. Claimant contends that he is disabled from a severe state of depression caused by the stresses that arose from an alleged tyrannical working environment at his school. The workers' compensation commissioner found that claimant had established the medical causation elements of a work-engendered mental disability claim, but had not proven the necessary elements to establish legal causation. The district court agreed.

Claimant asserts that the commissioner erred in failing to find that he had established both medical causation and legal causation sufficient to sustain a claim of work-related mental disability. In the alternative, he argues that, if legal causation does not exist, the standards for establishing that condition work a denial of equal protection of the law. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

Claimant was a teacher in the Waterloo Community School District from 1975 until April 2000. Except for the first five years of this period, he was a sixth grade teacher at Hoover Middle School, primarily teaching science. Claimant was an active member of the teachers' union and, until shortly prior to resigning as a teacher, was the union representative for his school building. The principal at Hoover Middle School from 1992 to 1998 evaluated claimant as a satisfactory teacher, although numerous parent complaints about his teaching methods were noted and certain reviews identified poor organizational skills and inability to control his temper.

In the fall of 1998, a new principal began working at Hoover Middle School. Claimant professes to have had no problems in his dealings with that principal during her first year at the school. During the 1999-2000 school year, claimant was diagnosed as suffering from tuberculosis. He alleges that during this school year numerous conflicts with the principal arose that produced great stress in carrying out his teaching responsibilities. In April of that school year, the principal and other teachers who claimant alleged were favored by the principal received anonymous emails in a critical and somewhat obscene tone. An investigation traced the source of these emails back to claimant. A criminal investigation resulted in a charge of harassment being brought against him. That charge was ultimately dismissed as part of an agreement between the prosecutors, claimant, and the school district pursuant to which claimant agreed to resign, and the school district agreed not to lodge a professional license complaint against him.

The sources of the stress that claimant identifies as the cause of his depression were the following:

1. The circulation among teachers in the building of a summary of parent input at a recent parent/teacher conference identifying claimant by name as having intimidated students. Evidence was produced at the arbitration hearing that these parent complaints against claimant were in fact lodged at the parent/teacher conference. However, the principal agreed that it was a mistake to have circulated a summary that identified the teacher against whom complaints had been made.

2. The principal's refusal to recommend that certain teachers in the building grade less leniently and more in keeping with claimant's philosophy of grading. Evidence presented indicated that, in declining to support claimant's efforts to change the grading philosophy of other teachers, the principal fully supported his right to apply his own grading philosophy to his students.

3. Claimant's science classroom, which was one of the largest classrooms in the building, was divided into two rooms. One of the rooms was devoted to the teaching of a remedial

English course. Claimant asserted that he needed the larger room to properly teach his science classes. Evidence was offered that the decision to divide the room was made by the central school administration in order to accommodate a much needed remedial English program. Claimant's classroom was chosen because of its size and the fact it had two doors, thereby facilitating the division.

4. Claimant contends that the building principal altered a district-wide school improvement plan in order to eliminate a seventh grade teacher that the principal did not like. Substantial evidence was offered to show that the school improvement plan had been developed prior to the principal in question arriving at Hoover Middle School and was a decision of central school administration based upon input from the various school buildings in the district.

5. An issue arose regarding an alleged willful circumvention of claimant in the process of teacher's applications for special training. Substantial evidence was presented that, although claimant, during the time that he was union representative for the building, was required to approve such applications as to form, the applicants who were alleged to have circumvented his review did this after claimant had been replaced as union representative. The dispute arose during a transition period, and the affected teachers indicated they much preferred to go to the new union representative because claimant unduly cross-examined them concerning their effort to secure special training.

6. An alleged pervasive atmosphere of favoritism of some teachers and intimidation of others (including claimant) engendered by the dictates of the building principal.

With regard to the sixth circumstance listed above, claimant presented a large volume of evidence that things were not going well at Hoover Middle School after the new principal arrived. At least nine teachers in addition to claimant testified that the new principal did in fact engender an appearance of favoring some teachers and intimidating others. Many of these teachers agreed that the principal appeared to be unreasonably antagonistic toward claimant. In response to these witnesses, the school district called the former building principal and assistant principal who testified that there had been a great deal of strife among teachers in the building during the time that they were the chief administrators there.

They characterized many of the teachers as strong-minded individuals who thrived on conflict.

In 1990 claimant had sought the help of a psychiatrist and was diagnosed as acutely depressed. He was treated regularly for three years during which he was taking the drug Prozac. His psychiatrist indicated that at the end of the three-year period claimant's depression was in remission. When claimant's problems with the criminal law arose in April 2000 as a result of his insulting email to the principal and others, he resumed seeing this psychiatrist. That doctor testified at the arbitration hearing that claimant was suffering from a recurring major depression and posttraumatic stress disorder from child abuse he had suffered at the hands of his stepfather.

This witness testified that claimant equated the principal with his abusive stepfather and that the stresses thus produced were a major cause of his current depressive state. In the witness's opinion, claimant will never be able to teach again. A psychiatrist that examined claimant on behalf of the school district did not agree that the workplace conditions were a producing cause of claimant's depression and was of the opinion that, as a result of previously existing mental problems, he misperceived the situations of which he has complained as a vendetta by the building principal.

In reviewing the evidence presented, the deputy industrial commissioner concluded that, although the medical evidence presented supported a claim of medical causation for purposes of proving a mentally induced injury arising out of the employment, the evidence did not meet the standard of legal causation that a claimant must show in order to prove a compensable mental injury. After an exhaustive review of the testimony given by all of the witnesses, the deputy concluded that the stressors

claimed were not sufficiently greater or unusual compared to stress experienced by other individuals in like or similar jobs, including those in the Waterloo Community School District, to satisfy the requirements for legal causation.

In reviewing the deputy's decision, the workers' compensation commissioner adopted the deputy's findings and conclusions and further noted that the claimant's allegations of stress, whether because of the specific circumstances alleged or due to the general climate within the school, would not be entirely unusual in a teaching setting. The commissioner ruled that "[t]he claimant's evidence in this case was not strong enough to cross the line" into levels of unusual stress required for proof of legal causation.

### I. *The Legal Causation Issue.*

In *Dunlavey v. Economy Fire & Casualty Co.*, 526 N.W.2d 845, 853-58 (Iowa 1995), this court recognized that a purely mental injury may be compensable under the workers' compensation laws in the absence of an accompanying physical injury. In order for a mentally injured worker to prevail on such a claim, *Dunlavey* required proof of both medical causation and legal causation. *Dunlavey*, 526 N.W.2d at 853. Medical causation simply requires a claimant to establish that the alleged mental condition was in fact caused by employment-related activities. Legal causation, on the other hand, presents a question of whether the policy of the law will extend responsibility to those consequences that have in fact been produced by the employment. *Id.* *Dunlavey* formulated the standard for legal causation as whether the claimant's stress was "of greater magnitude than

the day-to-day mental stresses experienced by other workers employed in the same or similar jobs, regardless of their employer." *Id.* at 858.[1]

In reaching their respective decisions in the present case, both the deputy workers' compensation commissioner and the commissioner strictly adhered to the *Dunlavey* standard of legal causation. They evaluated all of the specific instances that claimant asserts caused him abnormal levels of stress and concluded that events of the same or similar nature would not be abnormal in the teaching profession. With respect to the generalized claim of a pervasive atmosphere of intimidation testified to by many witnesses, the commissioner noted that this climate, which was attributed to the building principal, would not be an unusual perception in the workplace.

Although the standard of legal causation involves an issue of law, *see Dunlavey*, 526 N.W.2d at 853, the application of that standard to a particular setting requires the commissioner to render an outcome determinative finding of fact. A court on judicial review is bound by that fact-finding if it is supported by substantial evidence.

Evidence is substantial for purposes of reviewing the decision of an administrative agency when a reasonable person could accept it as adequate to reach the same finding. *Second Injury Fund of Iowa v. Bergeson*, 526 N.W.2d 543, 546 (Iowa 1995); *Second Injury Fund of Iowa v. Shank*, 516 N.W.2d 808, 812 (Iowa 1994). The fact that two inconsistent conclusions may be drawn from the same evidence does not prevent the agency's findings from being supported by substantial evidence. *Munson v. Iowa Dep't of Transp.*, 513 N.W.2d 722, 723 (Iowa 1994); *Reed v. Iowa Dep't of Transp.*, 478 N.W.2d 844, 846 (Iowa 1991). In situations in which the workers' compensation commissioner has rendered a finding that the

---

[1]In the later case of *Brown v. Quik Trip Corp.*, 641 N.W.2d 725, 728-29 (Iowa 2002), we formulated a different standard for those situations in which the mental injury can be readily traced to a specific event.

claimant's evidence is insufficient to support the claim under applicable law, that negative finding may only be overturned if the contrary appears as a matter of law. *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 238 (Iowa 1981); *Wetzel v. Wilson*, 276 N.W.2d 410, 412 (Iowa 1979); *Auxier v. Woodward State Hosp.-Sch.*, 266 N.W.2d 139, 144 (Iowa 1978).

In applying these principles to the present case, we conclude that, while evidence presented by the claimant would permit a finding of legal causation, it does not compel such finding. The ultimate decision in such instances is entrusted to the agency. Consequently, the decision of the workers' compensation commissioner and the district court must be affirmed.[2]

## II. *The Equal Protection Challenge.*

Claimant contends that the legal requirements for establishing a mental injury serve to deny a claimant equal protection of the law under the state and federal constitutions because an additional burden is placed on mental injury claimants that does not exist in establishing compensable physical injury. This assertion is premised on the fact that ordinarily it is not required as a condition of compensability that workplace hazards must be of a specified magnitude in order to produce a compensable injury, *see Floyd v. Quaker Oats*, 646 N.W.2d 105, 108 (Iowa 2002), while such a requirement has been imposed with respect to mental injury claims. Claimant insists that there is no rational basis for drawing this distinction.

We have recognized that, under both federal and state embodiments of equal protection when social or economic legislation is at issue, the states have wide latitude and such legislation will be presumed to be valid if the

---

[2]The case of *Humboldt Community Schools v. Fleming*, 603 N.W.2d 759 (Iowa 1999), relied on by claimant, presents an opposite example of the application of the substantial-evidence rule. In that case, the claimant prevailed because the agency found in the claimant's favor concerning the magnitude of the stress that existed.

classification drawn is rationally related to legitimate state interests. *Sanchez v. State*, 692 N.W.2d 812, 817 (Iowa 2005). We are satisfied that the classification at issue here does not affect a fundamental right and therefore review it under a rational-basis standard. Classifications do not deny equal protection of the law simply because they result in some inequality. *Claude v. Guar. Nat'l Ins. Co.*, 679 N.W.2d 659, 665 (Iowa 2004). They deny equal protection only if the lines drawn do not rationally advance a legitimate government purpose. *Id.*

In searching for a rational governmental purpose supporting the *Dunlavey* standard of legal causation in mental injury cases, we need only examine the reasons set forth in that opinion for adopting the standard that was chosen. After considering several different standards of causation in mental injury cases, some more restrictive than the one chosen and some less restrictive, we opted for the standard that was approved because we feared that if only causation in fact was required this would convert the workers' compensation system into general mental health insurance because few workers with nontraumatic mental problems could not show that job stress somehow contributed to that condition. *Dunlavey*, 526 N.W.2d at 855-56; *see also Brown v. Quik Trip Corp.*, 641 N.W.2d 725, 728 (Iowa 2002). The need to protect against that undesirable consequence provides a rational basis for the standard of legal causation that has been adopted. We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**

All justices concur except Hecht, J., who takes no part.