Jeanette A. DODD, Petitioner–
Appellant,

v.

FLEETGUARD, INC., and Constitution
State Services, L.L.C., Respondents–
Appellees.

No. 07–1342.

Court of Appeals of Iowa.

Aug. 13, 2008.

Mark S. Soldat of Soldat & Parrish–Sams, P.L.C., West Des Moines, for appellant.

Richard G. Book of Huber, Book, Cortese, Happe & Lanz, P.L.C., West Des Moines, for appellee.

Considered by HUITINK, P.J., and VOGEL and EISENHAUER, JJ.

HUITINK, P.J.

Jeanette Dodd appeals from a decision on judicial review upholding the workers' compensation commissioner's denial of her disability claim.

## I. Background Facts and Prior Proceedings

Since 1960 Dodd has held numerous jobs ranging from a dishwasher, to a waitress, elderly care provider, installer, and a painter. In 1994 she began working at Fleetguard, Inc. as an assembler. On April 10, 2001, she went to her family doctor, Dr. Dennis Colby, and complained of swelling in her right shoulder. In the medical record for this examination, Dr. Colby indicated: "No known injury, but this has given her problems and quite severe pain." Dr. Colby referred her to an orthopaedic surgeon.

At some point, Dodd reported the shoulder injury to Fleetguard and said that it was work-related. On April 27, 2001, a representative from Fleeguard's insurance agency interviewed her about the injury. When asked when this injury occurred, Dodd said nothing about a recent incident or injury. Instead, she answered: "It first started in 1995 and I was doing [work at Fleetguard]. And I thought it was just a sore muscle, so I shrugged it off. And as the years got by, it just got worse." She also told the representative that she did not report the 1995 incident and she had never sought treatment until her recent visit to Dr. Colby.

Dodd was eventually diagnosed with a rotator cuff tear. She underwent surgery to repair the shoulder on October 15, 2001. After this surgery, Dodd met with a third doctor to discuss her continuing shoulder pain.

On December 29, 2003, Dodd filed a petition with the Iowa Workers' Compensation Commissioner seeking benefits for a right shoulder injury that occurred "cumulatively and progressively." She claimed the injury manifested on or about April 15, 2001—five days after she first visited Dr. Colby for her shoulder pain. On December 14, 2004, she amended her petition by claiming the work injury manifested itself on or about April 10, 2001.

On December 22, 2004, Dodd met with Dr. John Kuhlein for an independent medical examination. When responding to questions propounded directly from Dodd's attorney regarding the cause of these injuries, Dr. Kuhlein stated that he did not believe the shoulder injury was a cumulative injury. Instead, Dr. Kuhlein indicated Dodd's shoulder condition was the result of two specific work-injuries. Dr. Kuhlein stated the first injury occurred in either 1997 or 1998, while the second occurred on April 15, 2001.

The matter proceeded to a hearing before the deputy commissioner. Besides Dodd's testimony, the only evidence addressing causation came from Dr. Kuhlein's medical report. The medical reports from her three treating physicians did not express an opinion on whether the shoulder injury was work-related. During direct examination, Dodd testified that on April 9, 2001, she felt a sharp pain in her shoulder while pulling filters towards her body. Her testimony continued as follows:

Q. Did you report that to anyone? A. Not at that time. I did the next day.

Q. And that was to [Fleetguard's safety director]? A. Yes.

Q. And then she sent you to Dr. Colby? A. Yes.

However, during cross-examination, she set forth a different sequence of events surrounding the time of the injury.

Q. Okay. You say you reported this [injury] to [the safety director] right away? A. Yes.

Q. Is she the one who made the appointment for you to see Dr. Colby? A. No. I think I first saw Dr. Colby on my own, but then [the safety director] intervened and said, "You have to go through"—because I wasn't sure what it was.

. . . .

Q. So you believe that you went to Dr. Colby first before reporting it as a work injury? A. I believe so.

Dodd also testified that Dr. Colby must have made a mistake when he wrote in his April 10, 2001 report that her shoulder pain was the result of "[n]o known injury."

On March 31, 2006, the deputy issued an arbitration decision denying Dodd's claim for benefits. The deputy found Dodd had "failed to prove she had sustained a work-related injury to her right shoulder and that her work caused her right shoulder condition." In doing so, the deputy concluded Dodd's testimony concerning the date and cause of her alleged injury was "not especially convincing" or "credible" because it was contradicted by Dr. Colby's medical report. The deputy also noted that the only physician who correlated the shoulder injury with work activity at Fleetguard—Dr. Kuhlein—based his opinion on Dodd's "less than credible" statements. The deputy also questioned the credibility of Dr. Kuhlein's report because it indicated the alleged work injury occurred on April 15, 2001—five days after she first sought treatment for her shoulder pain.

Dodd appealed this decision to the commissioner. In a brief ruling, the commissioner adopted the deputy's decision as his own. On judicial review, the district court affirmed the commissioner's decision and taxed the costs of the action against Dodd.

Dodd now appeals, claiming: (1) the commissioner's decision was erroneous because it did not include separate sections setting forth the findings of fact and conclusions of law, (2) the commissioner's decision was not supported by cited authority or reasoned opinion, (3) Fleetguard should have been precluded from disputing whether the injury arose out of and in the course of employment because it had waived this issue in the prehearing report, (4) the trial court erred by affirming the commissioner's findings and conclusions that Dodd was not credible and that her injury did not arise out of and in the course of her employment with Fleetguard, (5) the commissioner should have ordered Fleetguard to reimburse her for the medical examination she obtained from Dr. Kuhlein, and (6) the trial court erred by taxing judicial review costs against Dodd and by not remanding to the commissioner for re-taxation of agency costs.

## II. Standard of Review

■ The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs our review of this agency action. *See Pirelli–Armstrong Tire Co. v. Reynolds,* 562 N.W.2d 433, 436 (Iowa 1997). Iowa Code section 17A.19 (2007) lists the instances when a court may, on judicial review, reverse, modify, or grant other appropriate relief from agency action. We apply the standards of section 17A.19(10) to the agency's actions to determine whether our legal conclusions are the same as those reached by the district court. *See Ewing v. Allied Constr. Servs.,* 592 N.W.2d 689, 691 (Iowa 1999). If our conclusions are

the same, we affirm; if they are not, we reverse. *Id.* When reviewing the taxation of costs, our review is for abuse of discretion. *Robbennolt v. Snap–On Tools Corp.,* 555 N.W.2d 229, 238 (Iowa 1996).

### III. Merits

■ *Improper Format.* Before analyzing the merits of the commissioner's decision, we first reject Dodd's claim that the commissioner's decision was erroneous because it did not include separate sections distinguishing the findings of fact from the conclusions of law. *See* Iowa Code § 17A.16(1) ("A proposed or final decision shall include findings of fact and conclusions of law, separately stated." (emphasis added)). Even though the arbitration decision only has one heading for "FINDINGS OF FACT AND CONCLUSIONS OF LAW," we are able to clearly discern the line between the findings of fact, which end on one page, and the conclusions of law, which begin on the very next page. We find no error here.

■ *Waiver.* We also reject Dodd's claim that the issue of whether the injury arose out of her employment was waived when Fleetguard did not specifically identify this as a disputed issue on the prehearing conference report. Significant events happened after the prehearing conference report was filed. Dodd amended her petition to change the date of injury and also procured Dr. Kuhlein's medical report. Also, at the time of the hearing, the parties presented the deputy commissioner with a hearing report indicating that this issue was in dispute. The deputy then reviewed the hearing report with counsel and specifically noted that this issue was in dispute.

We will not reverse the commissioner on this issue because Dodd's attorney agreed the issue was in dispute and did not object when the deputy indicated she would be deciding this issue.

***Credibility and Adequacy of Decision.*** The thrust of Dodd's appeal attacks the commissioner's credibility findings and argues that the arbitration decision is not supported with cited authority or reasoned opinion. In essence, Dodd argues why we should conclude her testimony was credible.

■ In judicial review proceedings, we do not weigh the evidence de novo. *See New Homestead v. Iowa Dep't of Job Serv.,* 322 N.W.2d 269, 271 (Iowa 1982). It is the commissioner's duty as the trier of fact to determine the credibility of witnesses. *See Arndt v. City of LeClaire,* 728 N.W.2d, 389, 394–95 (Iowa 2007). We give deference to the commissioner's credibility findings, *Clark v. Iowa Dep't of Revenue & Fin.,* 644 N.W.2d 310, 315 (Iowa 2002), and we will affirm if there is substantial evidence in the record to support these findings. *See Wal–Mart Stores, Inc. v. Caselman,* 657 N.W.2d 493, 500 (Iowa 2003); *see also* Iowa Code § 17A.19(10)(f)(3) (noting the adequacy of the evidence must be judged in light of "determinations of veracity by the presiding officer who personally observed the demeanor of the witnesses").

■ Evidence is substantial for purposes of reviewing an administrative decision when a reasonable person could accept it as adequate to reach the same finding. *Asmus v. Waterloo Cmty. Sch. Dist.,* 722 N.W.2d 653, 657 (Iowa 2006). The fact that two inconsistent conclusions may be drawn from the same evidence does not prevent the agency's findings from being supported by substantial evidence. *Id.*

■ Based on our review of the record, we find there was substantial evidence to support the commissioner's credibility findings. When Dodd originally filed her

petition with the workers' compensation commissioner, she claimed her injury occurred "cumulatively and progressively" and manifested on or about April 15, 2001. After she filed this petition, Dodd procured her own doctor to perform an independent medical examination. This doctor rejected her theory that her right shoulder injury occurred cumulatively and progressively. Instead, he opined that her right shoulder cuff tear was the result of two specific injuries. At the hearing, Dodd claimed she injured her shoulder at work on a specific date—April 9, 2001—when she pulled some filters towards her and "felt this tear" in her shoulder. However, the medical notes from the doctor who examined her shoulder on April 10, 2001, state there was no known injury. The notes do not indicate she injured her shoulder at work and do not indicate she felt a "tear" in her shoulder. Likewise, when she was interviewed by Fleetguard's insurance representative on April 27, 2001, she did not mention the alleged April 9 work injury. Instead, she stated her shoulder pain started in 1995 while she was working at Fleetguard and "as the years got by, it just got worse." When this is combined with her wavering testimony concerning (1) whether Fleetguard sent her to see Dr. Colby and (2) when she first told Fleetguard about the injury, we find there is substantial evidence to support the commissioner's credibility findings.

■ We also find the deputy's reasons for discounting Dr. Kuhlein's causation opinion are equally sound. First, Dr. Kuhlein's opinion was "based on the history presented by Ms. Dodd," which the deputy found to be not credible. Second, Dr. Kuhlein's medical report identifies the date of injury as April 15, 2001,[1] even though Dodd first complained of her shoulder injury to Dr. Colby on April 10, 2001. The agency, as the fact finder, determines the weight to be given to any expert testimony. *Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998). Such weight depends on the accuracy of the facts relied upon by the expert and other surrounding circumstances. *Id.* Because the information relied upon by Dr. Kuhlein was deemed to be not credible, we find the commissioner had ample reason to reject his conclusion that the rotator cuff tear was caused by a specific work injury.

■ Dodd also claims the commissioner's conclusion constitutes reversible error as a violation of Iowa Code section 17A.16(1) because the commissioner did not support his conclusion with cited authority or a reasoned opinion and this "places both the court and Dodd in a position of not even knowing whether the correct causation standard was applied."

Iowa Code section 17A.16(1) states that each conclusion of law in an agency decision "shall be supported by cited authority or by a reasoned opinion." While interpreting this statute, our supreme court has noted

This court has long held that the commissioner must "state the evidence relied upon and [ ] detail reasons for his conclusions." Moreover, the commissioner's decision must be "sufficiently detailed to show the path he has taken

---

1. Dodd contends the April 15 date is merely a typographical error and that the report actually implies the injury occurred on or about April 10. In his report, Dr. Kuhlein states on two occasions—once on the cover page of the report and once in direct response to a question propounded by Dodd's attorney—that the April 2001 injury occurred on April 15. In light of the fact that Dodd originally claimed the injury manifested on April 15, 2001, we are unwilling to conclude that this was a typographical error. It may have been an accurate reflection of the information provided by Dodd.

through conflicting evidence." We have refrained, however, from reading "unnecessary and burdensome" requirements into the statute. Thus we have held the commissioner need not discuss *every* evidentiary fact and the basis for its acceptance or rejection so long as the commissioner's analytical process can be followed on appeal. So also have we held the commissioner's duty to furnish a reasoned opinion satisfied if "it is possible to work backward ... and to deduce what must have been [the agency's] legal conclusions and [its] findings of fact."

*Bridgestone/Firestone v. Accordino,* 561 N.W.2d 60, 62 (Iowa 1997) (internal citations omitted).

We find no error in the commissioner's analytical process. The commissioner rejected Dodd's claims because he found there was no credible evidence to prove there was a cumulative or specific injury. In doing so, the commissioner first determined Dodd's testimony describing how she had injured herself at work was not credible. He then noted there was no medical evidence to support Dodd's claim that the rotator cuff tear was the result of a cumulative injury. Finally, he determined Dr. Kuhlein's opinion relating the injury to two specific instances at work was worth little weight. The commissioner listed the reasons why he determined Dodd's testimony was not credible and listed reasons why he gave no weight to the opinion of the one doctor who supported her theory of causation. The commissioner's legal conclusions were apparent. We find no error here. *See Arndt,* 728 N.W.2d at 395 ("The reviewing court only determines whether substantial evidence supports a finding *'according to those witnesses whom the [commissioner] believed.'"*) (quoting *Tim O'Neill Chevrolet, Inc. v. Forristall,* 551 N.W.2d 611, 614 (Iowa 1996)).

For these same reasons, we also find no merit to Dodd's claims that the commissioner's decision was necessarily the product of reasoning that was so illogical as to render it wholly irrational and otherwise unreasonable, arbitrary, or capricious. *See* Iowa Code § 17A.19(10)(i), (*l*), (n). Dodd did not present credible evidence to prove her shoulder injury arose out of and in the course of her employment with Fleetguard. Without credible evidence to support her claim, she obviously failed to meet her burden of proof. We find no error in the commissioner's reasoning. Therefore we, like the district court, affirm that part of the commissioner's decision which finds Dodd is not entitled to workers' compensation benefits.

***Section 85.39 Fees.*** Iowa Code section 85.39 requires an employer to reimburse an employee for the costs of an independent medical examination (IME) when "an evaluation of permanent disability has been made by a physician retained by the employer and the employee believes this evaluation to be too low." Dodd's request for reimbursement of $1212.63 for a portion of the cost of Dr. Kuhlein's independent medical examination was denied, without analysis, by the commissioner. Likewise, the district court summarily denied this request for reimbursement as "moot."

Fleetguard does not dispute that, under the plain language section 85.39, all of the explicit requirements for reimbursement were satisfied. However, it contends it should not be required to pay for the IME because "chapter 85 is limited to injuries arising out of and in the course of employment" and "it would not be a logical construction of section 85.39 to require the employer to pay for a permanent impairment evaluation ... where the injury did

not arise out of and in the course of employment.... "

We disagree. Unlike section 85.27, section 85.39 does not state the employer's liability for medical expenses is dependent on the claimant's proof of compensability. *See, e.g.,* Iowa Code § 85.27 ("The employer, for all injuries compensable under this chapter or chapter 85A, shall furnish [medical services]."). Also, in a 2001 decision interpreting section 85.39 our supreme court did not identify any such implied requirement for reimbursement. *See IBP, Inc. v. Harker,* 633 N.W.2d 322 (Iowa 2001). Instead, while explaining the purpose behind section 85.39, the court emphasized the unequal financial position of the parties:

> Under the Iowa statute, the employer is given the right to choose who will provide treatment for an employee's injury. In addition, the employer is allowed to subject the employee to reasonable medical examinations by other physicians, presumably of the employer's choosing. The quid pro quo for these employer rights is the right of the employee to have a physician of his choosing present at any IME conducted at the employer's request and to have an IME conducted by a doctor of his own choice if the physician retained by the employer has given a disability rating unacceptable to the employee. In an apparent attempt to equalize the generally unequal financial positions of the parties, the legislature has said that the employer must pay for the employee's IME under the latter circumstances.

*Id.* at 327 (internal citations omitted).

■ In light of this stated purpose, the plain text of the statute, and the fact that we "liberally construe workers' compensation statutes in favor of the worker," *Ewing,* 592 N.W.2d at 691, we conclude section 85.39 does not include an implied

requirement that the claimant ultimately prove the injury arose out of and in the course of employment. Because Dodd met all of the requirements under section 85.39, we reverse that portion of the district court decision which affirms the commissioner's conclusion that Dodd was not entitled to reimbursement of $1212.63 for the IME.

## IV. Conclusion

We have considered all issues raised on appeal, whether or not specifically addressed in this opinion. We remand this matter to the agency for further proceedings consistent with this decision. Costs in the district court and on appeal are assessed equally between the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**