# IN THE COURT OF APPEALS OF IOWA

No. 22-0710
Filed June 7, 2023

**ROBERT SHRUM,**
        Petitioner-Appellant,

**vs.**

**BOLDT GROUP, INC., and TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,**
        Defendants-Appellees.

_____

        Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.


        An employee appeals a district court ruling on judicial review affirming the

denial of workers' compensation benefits. **AFFIRMED.**


        Thomp J. Pattermann and Laura L. Pattermann of Law Office of Gallner &

Pattermann, P.C., Council Bluffs, for appellant.

        Aaron T. Oliver of Hansen, McClintock & Riley, Des Moines, for appellees.


        Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Robert Shrum was working as a welder for Boldt Group, Inc. (Boldt) in September 2015 when he injured his right arm. He was diagnosed with a partial biceps tear, underwent surgery, participated in physical therapy, and was released to work less than one year later with no permanent restrictions. But while receiving treatment for his arm, Shrum intermittently reported pain in his neck and right shoulder. Though Boldt and its insurer, Travelers Indemnity Company of Connecticut, approved treatment for Shrum's arm, they did not approve care for the other conditions.

So in January 2019, Shrum sought workers' compensation benefits for his "[r]ight shoulder, right bicep, [and] right neck."[1] Following a hearing, the deputy workers' compensation commissioner found those conditions were causally related to the work injury, awarded him permanent partial disability benefits, and granted his request for alternate and ongoing care. The commissioner reversed the deputy's decision on intra-agency appeal, and the district court affirmed the commissioner on judicial review. Shrum appeals.

**I.  Scope and Standard of Review**

To start, we need to clarify the scope of our review. Shrum claims that "substantial evidence in the record supports *the deputy's finding* that [he] suffered injuries to his right arm, right shoulder and neck which arose out of and in the course of his employment with Boldt" and "was entitled to care, indemnity benefits and an award of industrial disability for the same," while the "commissioner's

---

[1] Shrum also made a claim for his lower back, which he amended to his upper back at the arbitration hearing. But he does not pursue that claim on appeal.

reversal is not supported by substantial evidence." (Emphasis added.) But it's the commissioner's final decision that is subject to judicial review, not the deputy's proposed decision.[2] *See KONE, Inc. v. Harrison*, No. 10-0872, 2011 WL 649044, at *2 (Iowa Ct. App. Feb. 23, 2011); *see also Giere v. Aase Haugen Homes, Inc.*, 146 N.W.2d 911, 915 (Iowa 1966) (noting that even though "[o]n substantially the same evidence the deputy and the commissioner reached opposite conclusions," "it is the commissioner's decision that we review").

When determining whether the commissioner's decision is supported by substantial evidence, we look for "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *See* Iowa Code § 17A.19(10)(f)(1). "[W]e judge the finding 'in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it.'" *Cedar Rapids*

---

[2] Shrum argues that "[t]o discount the Deputy's firsthand observations" of his credibility "and rely solely upon a written reduction of the evidence is a proposition unsupported in Iowa law." But the deputy did not make any express credibility findings about Shrum—the only witness who testified at the arbitration hearing. *Cf.* Iowa Code § 17A.19(10)(f)(3) (2020) (noting a court reviewing the record as a whole must consider "any determinations of veracity by the presiding officer who personally observed the demeanor of the witnesses"). Even if the deputy had made such findings, they would not be controlling. *See Iowa State Fairgrounds Sec. v. Iowa Civil Rts. Comm'n*, 322 N.W.2d 293, 295 (Iowa 1982) ("Even when credibility is involved, the agency, not the hearing officer, is charged with the authoritative responsibility to decide what the evidence means under the governing statute."); *Miron Constr. v. Poula*, No. 11-1165, 2012 WL 1058231, at *2 (Iowa Ct. App. Mar. 28, 2012) (affirming the commissioner's rejection of a deputy's finding that a claimant "did not testify in a credible and straightforward manner").

*Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) (quoting Iowa Code § 17A.19(1)(f)(3)).

## II.      Analysis

In reversing the deputy's decision, the commissioner found that Shrum "failed to satisfy his burden of proof to establish his neck and shoulder conditions are causally related to the work injury.  Thus, the deputy commissioner's finding that claimant sustained industrial disability is respectfully reversed."  *See* Iowa Code § 85.3(1) (2019); *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007) ("The claimant has the burden of proof to show by a preponderance of the evidence that the injury arose out of and was in the course of the claimant's employment."). As for Shrum's right-arm injury, which Boldt stipulated was causally related to his employment, the commissioner found that did not result in any permanent impairment.  The commissioner accordingly denied Shrum's claim for permanent partial disability benefits, along with his request for alternate or ongoing medical care for his neck and right shoulder.

Shrum claims the commissioner's decision was not supported by substantial evidence because the commissioner (1) relied on a factually inaccurate expert report from treating physician Dr. Brian Warme; (2) discounted a report from Shrum's expert, Dr. Charles Taylon, who performed an independent medical examination in August 2019; (3) incorrectly found Shrum experienced right shoulder pain before his work injury; and (4) gave too little weight to physical therapy notes documenting Shrum's complaints of pain in his neck and right shoulder after his work injury.  Our resolution of these arguments, which will be

discussed as they arise below, "is controlled in large part by the deference we afford to decisions of administrative agencies." *Pease*, 807 N.W.2d at 844.

## A. Neck

Starting with Shrum's neck condition, the commissioner found:

> The deputy commissioner, in finding claimant's neck condition is causally related to the work injury, relied on the report of Charles Taylon, M.D. A significant problem with Dr. Taylon's report, however, is that claimant testified both at hearing and in his deposition that he was not making a neck claim against defendants.

The record shows that at Shrum's deposition, Boldt's attorney asked him, "Are you claiming any neck or low back injury?" Shrum succinctly replied, "No." The same exchange took place at the arbitration hearing. We agree with the commissioner that this testimony "greatly undermines Dr. Taylon's opinion[]" that Shrum "aggravated a mechanical musculoligamentous injury involving his neck and shoulder."

The commissioner also found that Dr. Taylon's report was undermined by Shrum's failure to mention neck pain to two of the physicians he saw after the work injury. Shrum had an appointment with Dr. Charles Mooney, an occupational medicine physician, on October 5, 2015. In a self-assessment form, Shrum reported the following symptoms: "all around elbow, forearm, wrist and hand[.] Dull to shooting pain. Tightness in hand. [L]oss of grip." He did not note any neck or shoulder symptoms on a pain drawing that he completed for Dr. Mooney. The only reference to neck pain in Dr. Mooney's medical records was a notation in Shrum's past medical history that he had been in a "previous motor vehicle accident causing neck pain." That accident occurred in December 2007, following which Shrum saw his primary care physician, Dr. Rodney Yager, for chronic neck, shoulder, and back

pain in September 2008, August 2009, November 2011, December 2014, and June 2015—just a few months before his work accident in September. After Dr. Mooney referred Shrum to orthopedic surgeon Dr. Warme, Shrum again confined his complaints to his elbow, forearm, and hand at their first visit in December 2015. While Shrum did complain of "a little soreness" in his neck at his first physical therapy appointment after the accident, he did not repeat that complaint to a physician until February 2017. Substantial evidence accordingly supports the commissioner's determination that "notations of neck complaints after the work-related injury are few and far between."

The commissioner further discounted Dr. Taylon's "summary conclusion" about Shrum's neck because "Dr. Taylon failed to identify what, if any, of claimant's medical history he reviewed—or was even aware of." Shrum challenges this finding, noting that Dr. Taylon "specifically cites that the Claimant was seen for neck pain in 2007, 2008, 2009, and 2011, as well as in 2015 before his injury." Shrum is correct that Dr. Taylon noted those dates in his report, but that was the extent of his discussion about Shrum's past medical treatment for his neck. *See id.* at 845 ("[A]n expert's opinion is not necessarily binding upon the commissioner if the opinion is based on an incomplete history.").

Shrum further contends that "Dr. Warme's records are also replete with errors," including Dr. Warme's notation in December 2015 that "Shrum had not had any physical therapy when, in fact, he had." But it is the role of the commissioner, as the fact finder, to determine the weight to be given to any expert testimony. *See Sherman v. Pella Corp.*, 576 N.W.2d 312, 321 (Iowa 1998). In doing so, the commissioner may accept or reject the expert opinion in whole or in part—even if

that opinion is uncontroverted—so long as the commissioner states why it was disregarded. *See Sondag v. Ferris Hardware*, 220 N.W.2d 903, 907 (Iowa 1974). The commissioner did so here, acknowledging that while Dr. Taylon "was the only physician to specifically address [Shrum's] neck," he was disregarding that opinion because "it is unclear whether Dr. Taylon had a full understanding of claimant's history, in addition to claimant's failure to report neck complaints to his physicians, and claimant's testimony that he was not pursuing a neck claim."

We are satisfied from our review of the record that substantial evidence supports the commissioner's finding that Shrum's neck complaints were not causally related to the work injury. *See Hill v. Fleetguard, Inc.*, 705 N.W.2d 665, 674 (Iowa 2005) ("[W]e do not determine whether the evidence might support a different finding; instead we determine whether it supports the finding made.").

### B.    Right Shoulder

Most of Shrum's appellate brief is devoted to the commissioner's rejection of his right shoulder injury. On this issue, the commissioner found:

> [M]any of the same problems undercut the persuasiveness of Dr. Taylon's report. There are no mentions of shoulder pain in the records from Dr. Mooney, and an intake form completed by claimant made no notations of shoulder pain. Claimant's shoulder complaints do not appear in Dr. Warme's records until mid-2016, and like his neck complaints, the first indication of claimant's shoulder complaints in Dr. Yager's records do not appear until February of 2017—more than a year after the injury. To Dr. Warme, claimant reported "chronic" shoulder pain, and again, to Dr. Yager, claimant did not attribute it to the work injury but instead claimant indicated it had been "going on for years" and worse "the last 3 months."

Shrum does not really challenge the finding that he did not report any shoulder pain to Dr. Mooney, contending instead that "the tests performed by

Dr. Mooney are commonly used to diagnose an injury to the shoulder." But that is a fact outside the record before us. *See Hainey v. Protein Blenders, Inc.*, 445 N.W.2d 398, 399 (Iowa Ct. App. 1989) ("Our review is limited to the record made before the agency officer."). And, as related above, the medical forms that Shrum completed for Dr. Mooney were confined to complaints about his elbow, forearm, and wrist.

Shrum does, however, challenge the commissioner's finding that he did not report shoulder pain to Dr. Warme until mid-2016, noting that he made complaints before then to his physical therapist, who was in contact with Dr. Warme's office. Shrum points to a February 2016 record from Dr. Warme, where he noted that "surgical repair of the bicep tendon 'would not affect the other symptoms that he has in the shoulder or the arm and hand.'" And in an April record, a nurse in Dr. Warme's office documented that Shrum "asked about having his right shoulder checked out on the same claim." Dr. Warme addressed that issue at an appointment in June where, like the commissioner found, he noted Shrum "has chronic right shoulder pain." But whether Shrum's complaints of shoulder pain to Dr. Warme surfaced in February or June, they were not the focus of Dr. Warme's treatment of Shrum's work injury.

As for Dr. Yager, the first time that Shrum reported right shoulder pain to him after the work injury was in February 2017. The medical record from that appointment states, as the commissioner found, "Patient is here with a history of low back pain, cervical spine pain, and right shoulder pain *which has been going on for years. It has been worse for the last three months.*" (Emphasis added.) Shrum's medical records from Dr. Yager before the work injury show that in August

2009, Shrum reported "a history of chronic neck and shoulder pain, which has been going on for 20 years, since he was involved in a motor vehicle accident." In the years that followed, Shrum continued to occasionally see Dr. Yager and a chiropractor for shoulder pain.

Shrum contends that past treatment was limited to his left shoulder. But his medical records before the work injury show notations about both right and left shoulder pain, or shoulder pain in general. And when he went back to see Dr. Yager in February 2017, he did not link his shoulder pain to the work injury. A reasonable person could accept this evidence as sufficient to conclude, like the commissioner did here, that Shrum's right shoulder condition was not aggravated by the work injury. *See* Iowa Code § 17A.19(f)(1) (2020); *Asmus v. Waterloo Cmty. Sch. Dist.*, 722 N.W.2d 653, 657 (Iowa 2006) (stating evidence is substantial when a reasonable person could accept it as adequate to reach the same finding).

Yet Shrum argues the commissioner should have given more weight to his physical therapy records, which show that he "complained of neck pain and shoulder pain within a week of the date of the accident and continued to complain of it regularly for months." The commissioner "acknowledge[d] claimant reported shoulder complaints in physical therapy," but he found "the x-ray of his shoulder was unremarkable, and when claimant returned to Dr. Warme after the x-ray, there was again no discussion about shoulder pain or discomfort." Shrum's complaints about this finding, like his other complaints above, would require us to reassess the weight and credibility of the evidence—something we cannot do in conducting a substantial-evidence review of an agency decision. *See Arndt*, 728 N.W.2d at 394.

In the end, the commissioner found Dr. Warme's opinion "to be more consistent with the greater weight of the evidence" "regarding causation of claimant's shoulder." In a letter that was drafted by Boldt's attorney, Dr. Warme indicated by checkmark that he agreed with the following:

> As to the shoulder, Mr. Shrum first mentioned [that] to you at a visit on 6/07/16. The condition was noted to be chronic.
> . . . .
> As such, due to the delayed reporting to you, the alleged chronic nature of the condition, and the other information discussed above, you cannot attribute any shoulder . . . complaints to the 9/16/15 work injury.

Shrum takes issue with this letter for many of the same reasons discussed above, including that in February and April 2016, Shrum's medical records with Dr. Warme mention his shoulder. But, again, it was "within the 'peculiar province' of the commissioner" to accept or reject the expert opinions before him. *Pease*, 807 N.W.2d at 845 (citation omitted). We only determine "whether substantial evidence supports a finding according to those witnesses whom the commissioner believed." *Arndt*, 728 N.W.2d at 395 (cleaned up). The discrepancies that Shrum protests on appeal are minor and not the type that render Dr. Warme's opinion "so impossible or absurd and self-contradictory that it should be deemed a nullity by the court." *Pease*, 807 N.W.2d at 847–48 (citation omitted). We find substantial evidence supports the commissioner's findings about Shrum's right shoulder.

## C.     Right Arm

This leaves us with the commissioner's determination that Shrum was not entitled to permanent partial disability benefits for the stipulated right-arm injury. On that issue, the commissioner discounted the five percent whole body impairment rating assigned by Dr. Taylon, finding:

> Dr. Taylon . . . offered no specifics as to the basis of his five percent whole body impairment rating. He did not cite to the AMA Guides to the evaluation of Permanent Impairment, nor did he even identify what body part or condition (or combination thereof) the rating was for.

See Iowa Code § 85.34(2)(x) (2019) (requiring use of the guides published by the American Medical Association in determining percentage of impairment).

In contrast, the commissioner gave greater weight to Dr. Warme's opinion on permanency:

> Dr. Warme opined claimant sustained no permanent impairment and released him to full-duty work without restrictions. At his last appointment with claimant, claimant reported "great strength and no pain." While claimant testified he had some difficulties with his work after being released from Dr. Warme's care, he sought no additional treatment and he continued his job assignments through the union without restrictions until he voluntarily took a different job. This evidence is more consistent with Dr. Warme's opinion that claimant sustained no permanent impairment than it is with Dr. Taylon's opinion regarding permanency—which again, has no explained basis. I therefore find claimant sustained no permanent impairment as a result of the work-related injury. The deputy commissioner's finding regarding claimant's entitled to [permanent partial disability] benefits is therefore respectfully reversed.

Shrum repeats the same arguments about these findings as those already discussed and rejected above. For the same reasons, we find substantial evidence supports the commissioner's determination that Shrum did not suffer permanent impairment from his right-arm injury.

**D.    Alternate or Ongoing Medical Care**

Because we agree with the district court that substantial evidence supported the commissioner's determination that Shrum's neck and right shoulder conditions were not caused by his work injury, Shrum's claim for alternate or ongoing medical care for those conditions also fails. See id. § 85.27(1) (requiring "[t]he employer,

for all injuries compensable under this chapter or chapter 85A," to furnish reasonable medical care).

## III.    Conclusion

We, like the district court, conclude there was substantial evidence to support the commissioner's determination that Shrum's neck and right shoulder conditions were not causally related to his employment, as well as the commissioner's denial of permanent partial disability benefits for Shrum's right-arm injury and alternate or ongoing medical care for his neck and right shoulder. *See Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015) ("On our review, we determine whether we arrive at the same conclusion as the district court."). We therefore affirm the decision of the district court.

**AFFIRMED.**