# IN THE COURT OF APPEALS OF IOWA

No. 3-1170 / 13-0658
Filed March 12, 2014

**SUSAN ANN SULLIVAN,**
Petitioner-Appellant,

**vs.**

**CUMMINS FILTRATION-LAKE MILLS,**
**a/k/a CUMMINS, INC., f/k/a**
**FLEETGUARD, INC., and SECOND**
**INJURY FUND OF IOWA,**
Respondents-Appellees.

_____

Appeal from the Iowa District Court for Winnebago County, Rustin Davenport, Judge.

Susan Ann Sullivan appeals the district court ruling of her petition for judicial review. **AFFIRMED.**

Mark S. Soldat of Soldat & Parrish-Sams, P.L.C., West Des Moines, for appellant.

Richard G. Book of Huber, Book, Cortese & Lanz, P.L.L.C., West Des Moines, for appellee Cummins Filtration-Lake Mills.

Thomas J. Miller, Attorney General, and Julie Burger and Jennifer York, Assistant Attorneys General, Special Litigation, Des Moines, for appellee Second Injury Fund of Iowa.

Heard by Potterfield, P.J., and Doyle and Bower, JJ.

**BOWER, J.**

Susan Ann Sullivan appeals the district court ruling of her petition for judicial review. Sullivan claims the workers' compensation commissioner misapplied the Iowa successive-disability statute, and did not properly summarize the evidence and explain the agency's decision-making process. Sullivan also claims the commissioner erred by denying her application for alternative medical care. We find the successive-disability statute is inapplicable as Sullivan failed to prove a permanent partial disability and as a result there is no successive disability under the statute. We also find the commissioner's findings of fact and conclusions of law were sufficiently separated to allow us to reconstruct the commissioner's reasoning on appellate review. Because we find there is no disability, an award of alternative medical care is not available. We affirm.

## I.    Background Facts and Proceedings

Susan Ann Sullivan (Sullivan) is a former employee of Cummins Filtration[1] (Cummins) where she worked on various production lines for several years. During Sullivan's employment with Cummins, she suffered a number of injuries and physical ailments.[2] Only the two petitions Sullivan filed with the workers'

---

[1] Cummins Filtration, also known as Cummins, Inc., was formerly known as Fleetguard, Inc.

[2] Sullivan left Cummins for a brief period of time during which she worked at a Target distribution center in Minnesota. With the exception of the time she was employed by Target, she was employed at all material times by Cummins. Sullivan's initial term of employment with Cummins began on March 6, 1998. She was found to have no significant medical impairment at that time.

compensation commissioner on June 11, 2009, are before us for review. A discussion of Sullivan's prior medical and injury history is necessary to fully understand this dispute.

Sullivan sustained her first injury when she caught her right hand in a crimping machine on January 14, 1999. She was treated by Dr. Ciota who assessed a five percent permanent impairment to the whole body. Sullivan entered into a settlement that was approved by the commissioner establishing a twenty-two percent permanent partial disability in her right hand. Upon returning to work, Sullivan was symptom free.

Sullivan began experiencing swelling and pain in her hands in late 2001. The condition was reported to her supervisor on February 11, 2002. Sullivan engaged in many treatments with several doctors but continued to have symptoms. Sullivan and Cummins entered into a settlement regarding the February 11, 2002, injury that was approved by the commissioner on October 27, 2005. The settlement states Sullivan suffered a 16.068 percent permanent partial disability to her right arm.[3] Following the settlement, Sullivan returned to work with restrictions, which Cummins accommodated. [4]

There are two stipulated injuries that are presented on appeal. The first was reported to Cummins on August 17, 2007, after Sullivan noticed her hands were sore, swollen, numb, and tingling after she finished working the previous day. She was given additional restrictions and returned to appropriate work. One

---

[3] Sullivan also complained of a right finger injury, compensability of which was disputed by Cummins. Cummins paid Sullivan $1500 to settle the disputed claim.
[4] Sullivan also was self-employed part time during this period.

week later, she reported minor tingling and stated her hands were improving. She was referred to Dr. Mixdorf who diagnosed bilateral carpal tunnel syndrome. Dr. Mixdorf determined the carpal tunnel syndrome was probably work related. Sullivan was later transferred to Dr. Ciota who performed carpel tunnel release surgery on each arm. During a follow-up appointment shortly after the surgeries, Dr. Ciota found Sullivan to be "doing really well" and agreed she could return to work needing some restrictions for only two weeks. Dr. Ciota found Sullivan to be at maximum medical improvement (MMI) as of May 19, 2008 with no restrictions and no additional permanent partial disability.

Dr. Kuhnlein performed an independent medical evaluation on March 18, 2009, and related the carpal tunnel syndrome to Sullivan's work. He assigned a three percent permanent partial impairment to the right carpal tunnel, but found no permanent impairment for the left carpal tunnel.

The second stipulated injury was reported to Cummins on July 1, 2008. Sullivan was referred to Dr. Ciota with left wrist pain and diagnosed with left trigger finger. On July 16, 2008, Dr. Ciota diagnosed Sullivan with trigger finger from tenosynovitis and imposed work restrictions. The condition was found to be work related. Over the following months, Sullivan participated in physical therapy and continued to experience some trigger finger symptoms. Sullivan continued to experience symptoms when seen by Dr. Ciota on September 24, 2008. He diagnosed her with overuse repetitive tendonitis but separately stated she continues to suffer from trigger finger which would require surgery. The surgery was performed on October 15, 2008.

On October 29, 2008, Dr. Ciota examined Sullivan and found her to be doing well, though the overuse symptoms remained unchanged. She was released as to the trigger finger with no restrictions.

Sullivan was next referred to Dr. Mooney for evaluation.[5] After testing, Dr. Mooney opined that Sullivan's "complaints did not meet her diagnoses" and recommended a three-phase bone scan and prescribed an anti-inflammatory medication. Sullivan declined both recommendations. Dr. Mooney later found no impairment due to carpel tunnel and expressed his opinion that Sullivan had no evidence of overuse syndrome, tendinitis, or a repetitive trauma injury. As a result there could be no impairment. Finally, Dr. Mooney opined Sullivan's hand complaints did not fit within a diagnostic category and could be influenced by a "psychological component."

In his independent medical examination report, Dr. Kuhnlein related the trigger finger condition to Sullivan's employment, but was unable to relate the bilateral hand pain from her overuse symptoms to her work. His opinion was influenced, in part, by his conclusion that Sullivan's complaints did not match the findings of the medical examination. Dr. Kuhnlein found no impairment from the trigger finger or the hand pain.

Sullivan filed her petitions with the workers' compensation commissioner on June 11, 2009. The petitions named Cummins and The Second Injury Fund

---

[5] Sullivan self-servingly refers to Dr. Mooney as a "well-known defense doctor" on multiple occasions throughout her brief despite no supporting evidence.

of Iowa (the Fund).[6]  A hearing was held before a deputy workers' compensation commissioner on April 5, 2010.  The arbitration decision was filed on November 11, 2010.  In it, the deputy found the August 16, 2007 work injury was not the cause of any permanent disability.  Sullivan filed an application for rehearing which was denied.  After an appeal to the commissioner,[7] the case was remanded so the deputy commissioner could rule on a number of outstanding issues.  Most relevant to this appeal, the deputy was asked to determine the permanency claim for the July 1, 2008 stipulated injury.  On remand, the deputy found Sullivan had failed to prove a permanent disability as a result of the July 1, 2008 injury.  On appeal, the commissioner adopted the deputy's initial decision as modified by the remand decision, with additional reasoning on several other issues.  An application for rehearing was denied, and the commissioner's decision was affirmed on judicial review.

## II.     Scope and Standard of Review

We review workers' compensation commissioner cases under the Iowa Administrative Procedure Act, Iowa Code chapter 17A (2011).  *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006).  "Under the Act, we may only interfere with the commissioners decision if it is erroneous under one of the grounds enumerated in the statute, and a party's substantial rights have been prejudiced."  *Id.*  The grounds are enumerated in section 17A.19.  *See* Iowa Code § 17A.19.

---

[6] The Second Injury Fund is a named party to this appeal.  Because we affirm on appeal, all issues impact the Fund and Cummins identically, and we do not consider the Fund separately.

[7] The commissioner delegated authority to a deputy who acted in the place of the commissioner.  Throughout this opinion, we refer to the decisions of the deputy acting on delegated authority as "the commissioner."

We give deference to findings of fact made by the commissioner. *Meads v. Iowa Dep't of Soc. Servs.*, 366 N.W.2d 555, 561 (Iowa 1985).

## III. Discussion

Sullivan raises three separate issues on appeal. First, she claims the commissioner misapplied the successive-disability statute found in section 85.34(7). She also claims factual findings and decisions regarding material evidence were not properly explained by the commissioner. Finally, she claims the commissioner erred by denying alternate medical care and prematurely determined permanent disability issues.

### A. Permanency and successive disabilities

Sullivan claims the commissioner erred by denying application of the successive-disability statute. She contends the stipulated injuries should have been considered successive injuries compensable under the statute.

Section 85.34(7) governs an employer's liability for successive workplace injuries suffered while working for the same employer. The section holds when an employee has a preexisting disability from the same employment compensable under the same subsection and paragraph of the statute, the employer is responsible for the combined disability resulting from the injuries as compared to the employee's condition prior to the first injury. *See id.*

Sullivan contends the commissioner was also required to consider not a singular disability, but the effect of the stipulated injuries when combined with her prior disabilities. She also claims the commissioner should have entered findings of fact regarding whether her prior injuries were compensable under the same

subsection and paragraph of the statute, a threshold inquiry before the successive-disability statute can be triggered. However, Sullivan skips the first step in any successive-disability analysis. Before the commissioner can combine two disabilities to a compensable whole, there must be two disabilities available to be combined.

The statute does speak of combining a preexisting disability with "the employee's present injury." Iowa Code § 85.34(7)(b)(1). If the second injury, however, adds no additional disability, there is nothing to combine the original disability with. The statute makes this clear. Employers are responsible for compensating disabilities under section 85.34; a present disability is required before the statute is applicable. Additionally, the prior disability must have been "compensable under the same paragraph of subsection 2 as the employee's present injury . . . ." *Id.* § 85.34(7)(a). The clear requirement of the language is the present injury must be *compensable.* Only disabilities are compensable under the statute. As a result, the present injury must itself be compensable as a permanent disability before it can be combined into a successive whole.

The commissioner, recognizing this, correctly considered whether the present stipulated injuries were compensable permanent disabilities under the statute and found they were not. Though expert evidence is normally necessary to establish permanency, some injuries may by their very nature require a finding of permanency. *See Daniels v. Bloomquist*, 138 N.W.2d 868, 873 (Iowa 1965). As with other expert testimony, the commissioner must consider the expert's opinion along with all other evidence. *Sherman v. Pella Corp.*, 576 N.W.2d 312,

321 (Iowa 1998). It is then the commissioner's duty to weigh all the evidence and the commissioner may accept or reject the expert opinion in whole or in part. *Id.*

Though Sullivan does not explicitly claim her injuries are such that permanency is implied in her present condition, this is the essence of her claim. We find the commissioner was justified in relying upon the qualified medical opinions of multiple doctors in concluding Sullivan has recovered from the stipulated injuries and they have caused no permanent disability. Doctors have uniformly found the carpal tunnel symptoms have resulted in no permanency, and the evidence is overwhelming the trigger finger issues were completely resolved by surgery.

Without a compensable disability, the successive-disability statute is inapplicable and the commissioner committed no error.

### B. Form of the commissioner's ruling

Sullivan claims the commissioner's ruling is in error because it fails to separately state findings of fact and conclusions of law, as required by statute. She also contends the commissioner did not state reasons for rejecting uncontroverted evidence.

Section 17A.16 requires the commissioner include "findings of fact and conclusions of law, separately stated." Iowa Code § 17A.16(1). The purpose of the rule is to allow the reviewing court to determine when the commissioner is making a determination of fact and when the commissioner is engaging in the application or interpretation of law, so that we may properly review the relevant

portion of the decision. *See Dodd v. Fleetguard, Inc.*, 759 N.W.2d 133, 137 (Iowa Ct. App. 2008) (finding format proper where court is able to clearly determine where findings of fact end and conclusions of law begin despite lack of individual headings). Our review in this case is complicated by the number of decisions made during the agency process. Unlike the usual case, the record contains four separate rulings by the deputy or commissioner. The commissioner's final decision adopts the original arbitration decision as the final agency decision, as modified by the remand decision. The commissioner then adds additional reasoning. The conclusions, reasoning, and decision of the commissioner are spread across three separate documents. Sullivan is correct, the decision is not neatly broken down into a single set of findings of fact and a single set of conclusions of law.

Our supreme court has refrained from imposing "unnecessary and burdensome requirements into the statute." *Bridgestone/Firestone, Pacific Emp'rs Ins. v. Cathy Accordino*, 561 N.W.2d 60, 62 (Iowa 1997). Provided we can deduce the commissioner's decision making process, there is no requirement the commissioner duplicate previous agency efforts to provide a decision in an unnecessarily precise format. *Id.* Though the decision of the commissioner is complicated and spread across a number of documents, we are able to follow the commissioner's decision-making process for purposes of review. We are able to determine when the commissioner is engaging in fact finding and are provided with a path to follow so that we may review those factual conclusions.

Sullivan also claims the commissioner is required to go through each fact in the record and discuss its applicability to the final decision. This is not required. *Id.* The commissioner clearly explained the evidence relied upon. Sullivan asked the commissioner to reconsider the various restrictions she believes proved a permanent partial disability. The commissioner's decision discussed restrictions, but clearly finds the medical opinions of various doctors more persuasive.

### C.    Alternative medical care

Sullivan claims the commissioner erred in denying her request for alternative medical care, or alternatively erred by prematurely determining there had been no permanent disability.

Section 85.27(4) provides an opportunity for the commissioner to order alternative medical care when the employee is dissatisfied with the care provided and it can be shown the care provided was unreasonable. *See* Iowa Code § 85.27(4); *Bell Bros. Heating and Air Conditioning v. Gwinn*, 779 N.W.2d 193, 204 (Iowa 2010). The injury, however, must be compensable. Iowa Code § 85.27(1). A causal connection is an essential element of compensability.

The commissioner found the two stipulated injuries had reached MMI and were not the cause of a permanent disability. We have affirmed those conclusions. Alternative care is no longer needed for those injuries because no further care is necessary. Sullivan claims, however, an award of alternative medical care is required for her additional symptoms that have been attributed to overuse. The commissioner determined she had failed to prove a causal

connection between these symptoms and her work. We agree. As the commissioner points out, Dr. Ciota considered these complaints and found them unrelated to the stipulated, work related, injuries. No doctor has offered an opinion connecting the overuse symptoms to her employment. Dr. Kuhnlein discussed Sullivan's overuse symptoms and expressed doubt as to the accuracy of the complaints, finding a "strong psychological component" to her symptoms and noting Sullivan ceased any display of her symptoms when she was distracted during her examinations.

Expert testimony is generally required to establish a causal connection. *See Sherman*, 576 N.W.2d at 321. Sullivan offers no expert testimony to support a causal connection between her overuse symptoms and her work. Rather, she attempts to paint the overuse symptoms as a natural and unmistakable result of her history of hand and limb problems while working for Cummins. We agree with the commissioner that no such connection is compelled by the evidence. Based upon the evidence in the record, we find the commissioner's conclusion that the overuse symptoms were not causally connected to Sullivan's employment was supported by substantial evidence.

**AFFIRMED.**